## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-22833-BLOOM/Louis

RAYMOND H NAHMAD DDS PA, *et al.*,

      Plaintiffs,

v.

HARTFORD CASUALTY INSURANCE
COMPANY,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, ECF No. [7] ("Motion"). Plaintiffs filed a Response in Opposition, ECF No. [9] ("Response"), to which Defendant filed a Reply, ECF No. [17] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.     BACKGROUND

This matter stems from a lawsuit Plainitffs initiated in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendant on May 25, 2020. ECF No. [1-2] at 4-16 ("Complaint"). Defendant timely removed this lawsuit to this Court on July 10, 2020, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

According to the Complaint, Plaintiffs entered into an insurance contract with Defendant to insure Plaintiffs' business premises under a policy bearing No. 21 SBA VJ7288 ("Policy").[1]

---

[1] Defendant filed a certified copy of the Policy, ECF No. [6-1]. For purposes of analysis, citations to policy provisions will be to the page listed on the bottom of the Policy itself rather than to portions contained in the parties' briefings.

ECF No. [1-2] at ¶¶ 5-6. Plaintiffs operate a dental practice, which practice was suspended due to "orders issued by the Governor of Florida and Mayor of Miami-Dade County that non-emergent or elective dental care be postponed indefinitely" in light of the COVID-19 pandemic. *Id.* at ¶ 10. *See also id.* at ¶ 18-20 (alleging that a public health emergency was declared on March 1, 2020 and that Executive Order 20-72, limiting dental office operations, was issued on March 20, 2020). This suspension has had a "deleterious effect on [Plaintiffs'] business income." *Id.* at ¶ 21. Plaintiffs submitted a claim for business interruption loss, but Defendant denied Plaintiffs' claim on March 20, 2020. *Id.* at ¶¶ 22-24. Defendant denied the claim because the loss at issue did not come within the coverage grant of the Policy and because certain "potentially applicable exclusions" may bar coverage. *Id.* at ¶ 24. The Complaint asserts two counts: breach of contract (Count I) and declaratory relief (Count II). *Id.* at ¶¶ 11-12.

Regarding Count I, *id.* at ¶¶ 13-39, Plaintiff alleges that Defendant "is denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population." *Id.* at ¶ 11. In Plaintiffs' view, Defendant has breached the Policy by failing to provide coverage under the Policy's Business Income, Extra Expense, and Civil Authority provisions. *Id.* at ¶¶ 12, 25, 31-33.

Regarding Count II, *id.* at ¶¶ 40-54, Plaintiff seeks a "declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business interruption, and finds that [Defendant] is liable for the losses suffered by policyholders." *Id.* at ¶ 11.

Defendant now moves to dismiss the Complaint with prejudice as to both counts. ECF No. [7]. It makes four main arguments. First, the Policy's virus exclusion, ECF No. [6-1] at 135, bars coverage. ECF No. [7-1] at 6-7, 11-19. In this regard, it argues that the Policy's plain terms apply, the virus caused Plaintiffs' loss, and governmental orders aimed at slowing the spread of the coronavirus do not impact the applicability of the virus exclusion. *Id.* Second, even if the virus exclusion did not apply, Plaintiffs are not entitled to business income coverage because they do not allege any direct physical loss or damage to their property, which is required for coverage. *Id.* at 7, 19-20. Third, Plaintiffs are not entitled to "civil authority" coverage under the terms of the Policy. *Id.* at 7, 20-23. Finally, because there is no breach of contract given the lack of coverage under the Policy, Count I fails and, as a consequence, Count II fails. *Id.* at 23.

Plaintiffs respond that they have stated actionable claims. ECF No. [9]. They make five points. First, the Complaint sufficiently alleges a covered cause of loss under the Policy, *id.* at 6-11; second, the Complaint sufficiently alleges "loss of" or "damage to" insured property, *id.* at 11-15; third, the loss at issue is not specifically excuded by the Policy's "limited fungi, bacteria or virus coverage" provision, *id.* at 15-18; fourth; Count II is plausibly asserted, *id.* at 18; and finally, Plaintffs maintain that the issues underlying coverage and exclusions involve factual inquiries inappropriate for resolution at this time. *Id.* at 19-20.

Defendant replies that the Complaint alleges only economic losses rather than physical loss or damage, thus precluding coverage, and that regardless, the Complaint cannot avoid application of the Policy's virus exclusion. ECF No. [17] at 2. It adds that four courts have "now concluded COVID-19 business income losses do not satisfy the direct physical loss requirements of property policies." *Id.* at 3. They make three primary arguments. First, they assert that the virus exclusion applies and Plaintiffs' case citations are inapposite. *Id.* at 3-5. Second, Plaintiffs fail to carry their burden to demonstrate a direct physical loss because business income is not "covered commercial

property" under the Policy and the Complaint fails to demonstrate a direct physical loss. *Id.* at 5-10. Finally, there are no factual disputes that require resolution and dismissal is appropriate. *Id.* at 10.

The Motion, accordingly, is ripe for consideration.

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

It is through this lens that the Court considers the Motion and the parties' arguments.

## III.    DISCUSSION

Determining whether Defendant is entitled to dismissal of the Complaint raises three overarching issues. The first is whether the Complaint alleges facts that come within the scope of the Policy's coverage grants. If so, the second is whether coverage is nonetheless barred by a policy exclusion. And third, whether the claim for declaratory relief is actionable if the breach of contract claim fails. The Court will examine each issue in turn.

#### A.    The Policy

Under the Special Property Coverage Form, ECF No. [6-1] at 31, the Policy provides

coverage as follows:

> We will pay for direct physical loss of or physical damage to Covered Property at
> the premises described in the Declarations (also called "scheduled premises" in this
> policy) caused by or resulting from a Covered Cause of Loss.

> *Id.*

The premises, as listed in the declarations pages of the Policy, is 7950 N.W. 53 Street,

Suites 112, 113, and 114, Miami, FL 33166. *Id.* at 15-16. "Covered Property" includes buildings

and structures, business personal property, but it excludes "money," "accounts, bills," and

"valuable paper and records." *Id.* at 31-32. The Policy does not define "direct physical loss" or

"physical damage." A "Covered Cause of Loss" is defined as "risks of direct physical loss unless

the loss is: a. Excluded in Section B., Exclusions; or b. Limited in Paragraph A.4. *Id.* at 32

(capitalization omitted).

The Policy also provides additional coverage for business income, extra expense, and civil

authority as follows:

> Business Income: We will pay for the actual loss of Business Income you sustain
> due to the necessary suspension of your "operations" during the "period of
> restoration." The suspension must be caused by direct physical loss of or physical
> damage to property at the "scheduled premises," including personal property in the
> open (or in a vehicle) within 1,000 feet of the "scheduled premises," caused by or
> resulting from a Covered Cause of Loss. . . . With respect to the coverage provided
> in this Additional Coverage, suspension means: (a) The partial slowdown of your
> business activities; or (b) That part or all of the "scheduled premises" is rendered
> untenantable as a result of a Covered Cause of Loss if coverage for Business
> Income applies to the policy.

> *Id.* at 40.

> Extra Expense: We will pay reasonable and necessary Extra Expense you incur
> during the "period of restoration" that you would not have incurred if there had
> been no direct physical loss or physical damage to property at the "scheduled

premises," including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

*Id.*

Civil Authority: This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

*Id.* at 41.

Extended Business Income: If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period . . . Loss of Business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.

*Id.* at 42.

By endorsement, the Policy also contains an exclusion for "fungi," wet rot, dry rot, bacteria

and virus as follows:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria or virus. . . . This exclusion applies whether or not the loss even results in widespread damage or affects a substantial area.

*Id.* at 135.

### B.    Insurance contract interpretation in Florida

Both parties agree that Florida law governs interpretation of the Policy. *See* ECF Nos. [7-1] at 11; [9] at 7. The Court likewise agrees that Florida law controls. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

In determining coverage under an insurance policy, courts look at the policy in its entirety and are required to give "every provision its full meaning and operative effect." *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal quotation marks

omitted). Thus, when construing a policy's terms, "the pertinent provisions should be read *in pari materia.*" *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1074 (Fla. 1998)). A court's inquiry begins with "the plain language of the policy, as bargained for by the parties." *Steinberg*, 393 F.3d at 1230 (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Stated differently, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." (citation omitted)). The unambiguous language of the policy is controlling; however, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Steinberg*, 393 F.3d at 1230.

"[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x. 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976)). In the same vein, policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Hartnett v. Southern Ins. Co.*, 181 So.2 d 524, 528 (Fla. 1965)). Accordingly, exclusionary clauses restricting the insured's coverage are generally disfavored. *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)). The burden falls on the insurer to prove that an

exclusionary clause precludes coverage, and it must do so by "demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Id.* (citing *Northland*, 160 F. Supp. 2d at 1359); *see also U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983) ("Non-insurability is a defensive matter, with the burden resting on the insurer.").

### C.    The Complaint fails to allege coverage under the Policy's plain terms

Plaintiffs contend that the Motion should be denied because "[l]osses stemming from the COVID-19 Pandemic are without factual or legal precedent," and a "fact-specific inquiry into these issues is especially critical here, especially because insurance policy decisions are not binding where the policy forms and underlying facts differ." ECF No. [9] at 19. In their view, the "parties have barely scratched the surface of dense factual issues relevant to this coverage determination" and thus "an order concluding that coverage is barred as a matter of law is premature at the pleading stage." *Id.* The Court disagrees.

As Defendant correctly notes, Plaintiffs "do not identify a single factual issue that needs to be developed. The reason is simple: there are none." ECF No. [17] at 10. Numerous other courts across the country have dismissed substantially similar COVID-19-related lawsuits at this stage for failing to plead actionable claims under the insurance policy. *See, e.g.*, *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 220CV00401FTM66NPM, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020); *Seifert v. IMT Ins. Co.*, No. CV 20-1102

(JRT/DTS), 2020 WL 6120002 (D. Minn. Oct. 16, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020).

"Under Florida law, an insured seeking to recover under an all-risks policy . . . bears the burden of proving that a covered loss occurred at the insured property. The burden is on the insured to prove that the insurance policy covers a claim." *Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-CIV, 2017 WL 1250419, at *7 (S.D. Fla. Apr. 4, 2017). "In Florida, the insured has the burden of proving facts that bring its claim within an insurance policy's affirmative grant of coverage. In order to meet this burden under a policy of property damage insurance, the insured must prove (1) that the property harmed or damaged falls within the 'insuring clause' of the policy, and (2) the loss claimed falls within a second 'covered perils' provision contained in each policy." *Id.* (citation omitted; emphasis removed). Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. *Id.* If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion. *Id.* Accordingly, Plaintiffs bear the burden to demonstrate that coverage exists under the Policy.

Under the Policy's Special Property Coverage Form, coverage exists for "direct physical loss of or physical damage to Covered Property at the . . . 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss." ECF No. [6-1] at 31. According to Plaintiffs, the "Complaint sufficiently alleges that the 'cause' of loss was the governmental suspension orders and/or the COVID-19 Pandemic." ECF No. [9] at 10. Plaintiffs add that loss of business income "constitutes a direct 'physical loss' and 'physical damage,' as nonessential dental procedures were specifically suspended by Governor DeSantis." *Id.* at 11-12. In their view, economic damages alone without any corresponding physical harms to the Covered Property is covered under the Policy. *Id.* at 13-15. The Court is unpersuaded.

As an initial matter, business income is not included within the list of Covered Property under the Policy. ECF No. [6-1] at 32-33. In fact, money and accounts are expressly excluded from the definition. *Id.* But more importantly, the Complaint itself alleges that there were no physical harms to the insured premises because Plaintiffs' injuries are purely economic. *See* ECF No. [1-2] at ¶¶ 9-12, 21, 30. *See also* ECF No. [9] at 5 ("To be clear, [Plaintiffs] do[] not allege or argue that the closure(s) were precipitated by the presence of coronavirus on the insured property.").

Federal courts in Florida that have examined whether economic losses caused by COVID-19 business closures or suspensions constitute a "direct physical loss" or "physical harm" have rejected Plaintiffs' arguments. *See Malaube, LLC*, 2020 WL 5051581, at *5-7 ("courts in our district have found that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.' . . . Plaintiff has not alleged any physical harm. There is no allegation, for example, that COVID-19 was physically present on the premises. Instead, Plaintiff only alleges that two Florida Emergency Orders forced the closure of its restaurant. And, as stated earlier, courts have found this to be insufficient to state a claim because there must be some allegation of actual harm.") (citation omitted); *Infinity Exhibits, Inc.*, 2020 WL 5791583, at *3-5 ("Plaintiff argues that economic damage is synonymous with 'physical loss' and is therefore covered under the Policies. Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary. . . . Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts

showing physical property damage. . . . there is simply no coverage under the policies if they require 'direct physical loss of or damage' to property.").

The Court finds these decisions instructive. In *Malaube, LLC*, plaintiff sought to recover insurance benefits for the loss of business income to its restaurant as a result of government shutdowns in response to the COVID-19 pandemic. Just like here, plaintiff claimed that the government shutdown orders resulted in significant financial losses. 2020 WL 5051581, at *1. The insurer denied coverage and argued that the policy's virus exclusion applied, there was no coverage because plaintiff did not allege that it suffered any direct physical loss or damage to the insured property, and the emergency orders did not prohibit access to the property. *Id.* at *2. The policy similarly did not define "physical loss" or "physical damage." *Id.* at *5.

In examining the policy, that court determined that the complaint's allegations were insufficient to state a claim for coverage. *See id.* at *7 ("Plaintiff's allegations are insufficient to state a claim for an entirely separate reason because, when we examine the language of the insurance policy, 'direct physical' modifies both 'loss' and 'damage.' That means that any 'interruption in business must be caused by some *physical problem* with the covered property . . . which must be caused by a 'covered cause of loss.'") (citing *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005); *see also United Airlines, Inc. v. Ins. Co. of State of Pa.,* 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid.")).

The court further analyzed Florida state court decisions, determining that "Florida's appellate courts are in agreement with this interpretation," and it noted that the "Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020),

is also consistent with our interpretation of Florida law." *Id.* at *7-8 (summarizing *Mama Jo's*).[2] Notably, the court then compared *Mama Jo's* framework to the complaint's allegations and determined that plaintiff's allegations are "far weaker," especially as "it is not plausible how two government orders meet [coverage under the policy] when the restaurant merely suffered economic losses – not anything tangible, actual, or physical." *Id.* The court also looked at other provisions and concluded that "if there was any lingering doubt on whether a loss of use for pure economic reasons could be recoverable under the policy, the other provisions of the policy put that uncertainty to bed." *Id.* at *9. Accordingly, the carrier's motion to dismiss was granted.

In *Infinity Exhibits, Inc.*, the court dismissed with prejudice plaintiff's claims for business income loss related to government shutdown orders caused by the COVID-19 pandemic because plaintiff "has not alleged direct physical loss or damage to the Property" under the all-risk policy. 2020 WL 5791583, at *2. In particular, the court reasoned that *Mama Jo's* decision "undercuts Plaintiff's response" to the motion to dismiss because it "rejects Plaintff's argument that the Policies are ambiguous" and "also rejects Plaintiff's contention that pure economic losses are covered." *Id.* at *4. The court further collected cases from across the country where courts denied

---

[2] In *Mama Jo's*, 2020 WL 4782369, which did not involve COVID-19, the Eleventh Circuit affirmed summary judgment in favor of defendant insurer where the plaintiff submitted a claim to the insurer for cleaning the restaurant and for business income loss related to nearby road construction that caused dust and debris to interfere with the restaurant's operations. Like the Policy here, the all-risk policy provided coverage for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." *Id.* at *8. The Court explained that under Florida law, the definition of "direct physical loss" is the "dimininution of value of something" and that "'[d]irect and 'physical' modify loss and impose the requirement that the damage be actual." *Id.* (citations omitted). Regarding the cleaning claim, the court determined that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* As to the business income loss claim, the court noted that there was no evidence that the restaurant "suffered a direct physical loss of or damage to its property during the policy period." *Id.* at *9.

claims for economic losses related to the COVID-19 pandemic where there is no accompanying physical property harms or damages. *Id.* at *4-5.

Plaintiffs fail to convince the Court that the instant allegations command a different result. *See also Sandy Point Dental, PC*, 2020 WL 5630465, at *2-3 (determing that there was no coverage for dental office's losses due to COVID-19 closures; "The critical policy language here— 'direct physical loss'—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure . . . In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage.").

The Complaint does not allege any physical harm to Plaintiffs' Covered Property much less "direct physical loss of or physical damage" caused by or resulting from a "Covered Cause of Loss." ECF No. [6-1] at 31. Accordingly, there is no coverage under the Special Property Coverage Form.[3] As for additional coverages under the Business Income, Extra Expense, and Extended Business Income provisions, *id.* at 40-41, there is likewise no coverage under those portions of the

---

[3] Plaintiffs contend that *Maspons*, 211 So. 3d 1067 "hits the nail on the head" and "forecloses [Defendant's] argument that damage to the building or structure itself is required to trigger coverage or that damage to that [] insured property is 'not covered.'" ECF No. [9] at 14. The Court is unconvinced. In *Maspons*, the loss at issue involved an actual tangible harm because a drain pipe failed to perform its function, and the case involved the repair of the drain line. *See* 211 So. 3d at 1069 ("it is clear that the failure of the drain pipe to perform its function constituted a 'direct' and 'physical' loss to the property within the meaning of the property."). Here, by contrast, Plaintiffs allege only pure economic losses without any corresponding physical components. And, to be sure, *Malaube, LLC*, *Infinity Exhibits, Inc.*, and *Mama Jo's Inc.* all cite *Maspons* in support of finding no "direct physical loss or damage" under the policies.

14

Policy because the Complaint fails to allege "direct physical loss of or physical damage to" the property, which is a necessary component of coverage under those provisions.

As for coverage under the Civil Authority provision, that coverage applies when "access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" *Id.* at 41. Plaintiffs do not clearly express how the Complaint alleges coverage within the terms of this provision other than to state that Defendant "employs legal gymnastics to twist coverage endorsements . . . into supplemental restrictions." ECF No. [9] at 9. Regardless, the Court agrees with Defendant that the Complaint does not allege coverage under this provision.

First, Plaintiffs fail to allege that access to the premises is prohibited "as the direct result of a Covered Cause of Loss," which again under the Policy means a "risk[] of direct physical loss," "to property in the immediate area[.]" ECF No. [6-1] at 32. The Complaint alleges no physical harm to any properties in the immediate area, only suspensions and closures in general due to government orders. ECF No. [1-2] at ¶ 8. *See Seifert*, 2020 WL 6120002, at *4 (granting motion to dismiss civil authority coverage claim because plaintiff "does not plead any facts demonstrating that the coronavirus contaminated properties neighboring his businesses, or that a civil authority then prohibited him from entering his insured properties because of any such contamination").

Second, the Complaint does not allege that "access" to the "scheduled premises" was "specifically prohibited by order of a civil authority." Rather, Plaintiffs allege that they suspended or reduced their practice because two government orders required "that non-emergent or elective dental care be postponed indefinitely." ECF No. [1-2] at ¶ 10; *see also id.* at ¶ 19 (alleging that Governor DeSanitis issued an order "specifically prohibit[ing] all dental offices from providing any medically unnecessary, non-urgent or non-emergency procedure or surgery. Accordingly, all . . . dentists, were ordered to immediately cease performing these elective services."). Plaintiffs do

not allege that they were prohibited from accessing the premises nor do they allege that they could not perform medically necessary non-elective medical procedures. Merely restricting access to Plaintiffs' dental practice for essential medical services does not trigger coverage under the Policy's Civil Authority provision. *See, e.g.*, *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010) ("When the action of a civil authority completely shuts down access to a party's premises, federal courts have held that the coverage in insurance policies similar to the one at bar are triggered. However, where the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered under policies like the one in the instant case.").

Accordingly, Plaintiffs have failed to allege facts that come within the Policy's coverage grants. Count I for breach of contract, therefore, fails to state a claim upon which relief can be granted because Plaintiffs have not shown that Defendant breached its obligations under the Policy.

### C. The Policy's virus exclusion applies even if Plaintiffs had alleged facts otherwise supporting the existence of coverage

Assuming for argument's sake that Plaintiffs had alleged facts triggering coverage under the Policy, the virus exclusion would still apply to bar coverage for Plaintiffs' losses. Under the Policy, the parties agreed that Defendant

> will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria or virus. . . . This exclusion applies whether or not the loss even results in widespread damage or affects a substantial area.

> ECF No. [6-1] at 135.

According to Defendant, the Complaint alleges that the COVID-19 pandemic triggered the civil government orders to halt the spread of the virus, which in turn led to Plaintiffs' business suspension and/or closure, and hence coronavirus is one of the direct or indirect causes for Plaintiffs' losses. ECF No. [7-1] at 7-8. Plaintiffs respond that they have not alleged that coronavirus caused their business losses, but rather they are "seeking to be made whole for covered business closures precipitated by a series of government orders aimed at fighting the COVID-19 Pandemic." ECF No. [9] at 5. *See also id.* at 12 ("Significantly, the operative causes of the loss were the government suspension orders suspending [Plaintiffs'] operations and the COVID-19 pandemic, as opposed to the presence of the coronavirus on the insured property.").

Upon consideration, the Court does not agree that Plaintiffs' distinction between the government orders versus the virus as the immediate cause of their losses avoids the plain language of the virus exclusion. Even if COVID-19 is not a direct cause of their losses, the Complaint's allegations demonstrate that the government's civil orders were specifically enacted to address COVID-19 activity in Florida. *See* ECF No. [1-2] at ¶¶ 7-12. Thus, coronavirus still remains part of the causal chain leading to Plaintiffs' losses, and the exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." As Defendant argues, the government orders at issue "undisputably exist solely to reduce or limit the spread of the virus and would not have been issued absent the coronavirus." ECF No. [7-1] at 8.

Court that have considered whether the virus exclusion applies where government closure orders themselves rather than the virus are alleged to be the cause of plaintiff's business losses, have rejected similar arguments and determined that coverage is excluded. *See, e.g.*, *Mauricio Martinez, DMD, P.A.*, 2020 WL 5240218, at *2 (determining that virus exclusion barred dental office's claims for business losses caused by COVID-19 government orders because "the policy expressly excludes insurer liability for loss or damage caused 'directly or indirectly' by any virus"

and plaintiff's "damages resulted from COVID-19, which is clearly a virus"); *Diesel Barbershop, LLC*, 2020 WL 4724305, at *6 ("the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing."); *Seifert*, 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) (granting motion to dismiss pursuant to virus exclusion because plaintiff "alleges that his business losses are the direct and proximate result of 'Governmental Pandemic Closure Orders; orders that have been put in place in an effort to control the spread of the COVID-19 Pandemic.' Pursuant to the anti-concurrent loss provision, if a virus is any part of the causal chain causing a loss, then the loss is not covered.").[4] This is all the more so given that the Complaint expressly alleges that Plaintiffs' losses were incurred from measures "to stop the spread of COVID-19[.]" ECF No. [1-2] at ¶ 11.

Further, the Court rejects Plaintiffs' argument that the virus exclusion is ambiguous because the term "virus" is undefined in the Policy. ECF No. [9] at 12, 15-16. "An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction. 'Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous.'" *Malaube, LLC*, 2020 WL

---

[4] The Court recognizes that in *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 620CV1174ORL22EJK, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020), the court rejected defendant's argument that the instant virus exclusion barred coverage. However, unlike here, that court refused to "make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered" because, in part, the parties failed to provide the court with relevant coverage forms that corresponded to the exclusions.

5051581, at *3 (citations omitted). Plaintiffs offer no basis for construing "COVID-19" or the "pandemic" as a non-virus for purposes of this exclusion. Nor can they plausibly do so, as the global spread, proliferation, and activity of "coronavirus" is the underlying pandemic at issue.[5] *See* ECF No. [1-2] at ¶¶ 7, 11, 18, 30 (alleging that the Centers for Disease Control and Prevention issued guidance for "stopping the spread of COVID-19," Florida declared  a public health emergency caused by the "COVID-19 pandemic," and civil authorities have responded to "stop the spread of the outbreak"). Indeed, they cite no cases where courts have determined that COVID-19 is not a virus for purposes of this exclusion.

Finally, while Plaintiffs maintain that the anti-concurrent causation language contained in the virus exclusion rests on "shaky ground," ECF No. [9] at 17, they fail to establish that the exclusion contains an ambiguity precluding this clause's application. Additionally, as Defendant notes, Florida courts enforce anti-concurrent causation clauses where the excluded peril is one cause of the loss. *See, e.g.*, *Sec. First Ins. Co. v. Czelusniak*, No. 3D19-589, 2020 WL 2463762, at *1 (Fla. 3d DCA May 13, 2020) ("However, when the insurer explicitly avoids the application of the concurring-cause doctrine with an anti-concurrent cause provision, the plain language of the policy precludes recovery. . . . '[P]arties may contract around the concurrent cause doctrine with an anti-concurrent cause provision.'") (footnote and citations omitted); *Hatch v. GeoVera Specialty Ins. Co.*, No. 617CV2142ORL41DCI, 2019 WL 2515926, at *4 (M.D. Fla. June 18, 2019) (enforcing anti-concurrent cause provision related to losses caused by earth movement). As

---

[5] The Court disagrees with Plaintiffs that *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 513 F. App'x 927 (11th Cir. 2013) renders the virus exclusion inapplicable. That case is distinguishable because the exclusion under that policy was limited to the "presence of any 'fungi' or bacteria on or within a building or structure," and the injury at issue occurred in an outdoor spa, which did not qualify as a structure. *Id.* at 932. Here, the virus exclusion does not contain any similar restrictive language. Further, the Complaint does not allege that coronavirus was present at the premises. ECF No. [1-2] at ¶ 30. *See also* ECF No. [9] at 5, 18 (emphasizing that Plaintiffs do not allege that coronavirus was present on the insured property).

such, the Court agrees with Defendant that even if the Complaint's allegations came within the Policy's coverage grants, the virus exclusion applies to bar coverage. Accordingly, Count I for breach of contract fails.

### D.   Count II is duplicative of Count I and fails to state an actionable claim

Plaintiffs seek a declaratory judgment that there is coverage for their losses under the Policy. *See* ECF No. [1-2] at ¶¶ 11, 40-54. "Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim. Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) (internal citation omitted). Declaratory judgment claims that functionally seek adjudication on the merits of a breach of contract claim are duplicative and cannot stand. *See Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, No. 11-21163-CIV, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017); *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV, 2018 WL 3672265, at *3-4 (S.D. Fla. July 24, 2018), *report and recommendation adopted*, No. 18-CV-60562, 2018 WL 4409851 (S.D. Fla. Aug. 16, 2018).

Here, the Court does not find that an actual controversy exists under the Policy as to whether coverage exists for Plaintiffs' losses. The claim for declaratory relief, in essence, is that judicial interpretation of the Policy could result in coverage for the same losses that underlie the breach of contract claim. "Because the breach-of-contract claim is dismissed, no controversy exists. Accordingly, Count II is dismissed as well." *Mauricio Martinez, DMD, P.A.*, 2020 wl 5240218, at *3.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [7]**, is **GRANTED**.

2. The Complaint, **ECF No. [1-2]**, is **DISMISSED** *with prejudice*.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**,

   all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.

4. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 1, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record